Belle Harbor Washington Hotel, Inc. v Jefferson Omega Corp. (2004 NY Slip Op 50783(U))

[*1]

Belle Harbor Washington Hotel, Inc. v Jefferson Omega Corp.

2004 NY Slip Op 50783(U)

Decided on June 25, 2004

Supreme Court, Queens County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 25, 2004

Supreme Court, Queens County
BELLE HARBOR WASHINGTON HOTEL, INC., LEVBARN REALTY CO., BERNSTAN REALTY, LTD. and JOYCE NESS,
against
JEFFERSON OMEGA CORP. et al., Defendants.
3175/2004

James Klatsky, Esq., Raice, Paykin & Krieg, for plaintiffs. Michael J. Petersen, Esq., for defendants.

Janice A. Taylor, J.
On or about June 23, 2003, the parties herein entered into a contract for the purchase of real property, which made "time of the essence", closing to occur no later than February 10, 2004. The contract provided for a purchase price in the amount of $2,450,000.00, covering three parcels of real property owned by the plaintiffs herein. The contract further provided for an additional $950,000.00 to be paid to plaintiff Joyce Ness by the defendants in consideration of her surrendering her option to purchase the same parcels of real property from the remaining plaintiffs. The total purchase price under the contract was $3,400,000.00 The contract was thereafter amended by letter agreement dated [*2]August 31, 2003 to reflect that the contract price had increased by $100,000.00, bringing the entire amount due thereunder to $3,500,000.00. After deducting the down payment of $350,000.00 held by the plaintiffs' closing attorney/escrowee, a balance of $3,150,000.00 was due at closing from the defendants-purchasers. Defendants were duly notified that time would be of the essence, and that the closing would be held no later than February 10, 2004 by notice from purchasers' closing counsel dated January 26, 2004. The closing was advanced to February 9, 2004, one day before the law day, at the request of the defendants. Closing counsel for the plaintiffs, defendant Joseph Berliner, Esq., advanced the closing, but did not cancel the law day scheduled for February 10, 2004. The plaintiffs were ready, willing and able to deliver title on February 9, 2004, but the defendants refused to pay the balance due under the contract of $3,150,000.00, insisting that they would only pay a balance of $2,200,000.00. Plaintiffs' closing counsel deemed defendants in default under the contract, and advised them that they could cure their default by reconvening at his office on the law day, February 10, 2004,and tendering the closing balance of $3,150,000. Plaintiffs were again ready, willing and able to convey title on February 10, 2004, but the defendants failed to appear.
The instant motion raises two questions: first, whether the plaintiffs demonstrated as a matter of law that the defendants agreed to pay an additional $950,000.00 (total contract price of $3,500,000.00) to Joyce Ness in consideration of her surrendering her option to purchase the above premises; and second, whether the plaintiffs demonstrated as a matter of law that the defendants breached the contract for the purchase of the property. For the reasons which follow, this court concludes that both questions must be answered in the affirmative.
A party moving for summary judgment must make a prima facie showing of entitlement to judgment as a matter of law, offering sufficient evidence to demonstrate the absence of a triable issue of fact (see, Bensonhurst Real Estate, Ltd. v. Helsam Realty Co., 766 N.Y.S.2d 857 [2d Dept. 2003]; Alvarez v. Prospect Hosp., 68 N.Y.2d 320 [1986]; Zuckerman v. City of New York, 49 N.Y.2d 557 [1980]).
As to the threshold question, the plaintiffs have demonstrated their prima facie entitlement to the additional $950,000.00 by tendering the agreement, duly executed by defendant Herman Segal on behalf of defendant Jefferson Omega Corp., wherein the defendants agreed, in pertinent part, "to pay to Joyce Ness said sum of $950,000.00 by certified or bank checks at the closing" and that "[u]nless said additional sum of $950,000.00 is paid to Joyce Ness as provided herein, the Purchaser shall be considered in default of the Contract of Sale" (see, Exhibit "B" to plaintiffs' moving papers). The agreement bears the signatures of all of the plaintiffs, and of Herman Segal on behalf of Jefferson Omega Corp. The plaintiffs also proffered in support of the within motion, the affirmation of plaintiffs' closing counsel, defendant/escrowee Joseph Berliner, Esq., who avers that he personally witnessed the execution of all of the contractual documents and letter agreements by defendant Herman Segal in his presence and in the presence of defendants' closing counsel, Robert Teitelbaum, Esq.
The court further notes that the down payment of $350,000.00, securing the transaction at issue, which is 10% of the total contract price of $3,500,000.00 claimed by plaintiffs, lends further [*3]credence to the plaintiffs' contention.
The burden on this summary judgment motion by plaintiffs then shifted to the defendants, and, as the opponents of a motion for summary judgment, they had the burden of producing evidence sufficient to demonstrate that there is an issue of fact which must be tried (see, Alvarez v. Prospect Hosp., supra). The defendants herein did not successfully carry that burden on this issue.
The affidavit in opposition submitted by defendant Herman Segal states, in pertinent part that:

"I did not agree to pay $950,000.00 additional consideration for either the purchase of the parcels or for the purchase of an existing option contract. This document was created by plaintiffs and is a fiction designed to extract a cash payment from me, or to be able to cancel my purchase contract."
(Affidavit of Herman Segal at p. 2, paragraph 6). Conspicuous by its absence from defendant Segal's affidavit is any express denial of the genuineness of his signature, which appears on the agreement below that of the plaintiffs, or any denial by defendant Segal that he in fact signed the agreement (see, James v. Albank, 307 A.D.2d 1024 [2d Dept. 2003]).
The affirmation in opposition submitted by defendants' closing attorney, Robert Teitelbaum, Esq., states, in pertinent part that:

"It is true that the Contract in the amount of Two Million Four Hundred Fifty Thousand ($2,450,000.00) Dollars was signed in my presence. The purported Rider to the Contract which alleges to obligate my client to pay an additional $950,000.00 at closing was not, however, known to me, nor reviewed by me. I am unaware as to when, if at all, this document was executed by the purchaser."
(Affirmation of Robert Teitelbaum, Esq. at p. 1, paragraph 3, and p. 2, paragraph 4). Conspicuous by its absence is any express denial that defendant Segal signed the agreement, or any claim that the signature which appears thereupon, purporting to be defendant Segal's, is a forgery.

Plaintiffs' closing counsel, Joseph Berliner, Esq. avers that:
"The purchase price was agreed to between the parties at the time of the signing of the Contract which Contract, rider and attachments were executed by Mr. Herman Segal, Defendant, in my presence and in the presence of his attorney, Robert Teitelbaum, Esq."
(Affirmation of Joseph Berliner, Esq. at p. 2, paragraph 5). Thus, plaintiffs' closing counsel unequivocally states that he actually witnessed the execution of all of the contractual documents by defendant Herman Segal.
[*4]
Where a party expressly denies that his signature on a document is genuine, thereby requiring a handwriting comparison under C.P.L.R. §4536, an issue of fact is raised which is not appropriately resolved by motion for summary judgment (see, James v. Albank, supra; Pasqualini v. Tedesco, 248 A.D.2d 604 [2d Dept. 1998]; Dyckman v. Barrett, 187 A.D.2d 553 [2d Dept. 1992]; Lane Crawford Jewelry Ctr. v. Han, 222 A.D.2d 214 [1st Dept. 1995]).
In the case at bar, the court finds that the tergiversatory statements of defendant Segal and attorney Teitelbaum do not amount to express denials of the genuineness of defendant Segal's signature on the agreement in question. Thus, they do not suffice to properly raise an issue of fact that must be tried as to whether defendant Segal in fact signed the documents, evidencing his assent thereto, since neither flatly denies that defendant Segal signed the instrument in question, and since plaintiffs' closing counsel, Joseph Berliner, Esq. expressly avers that he witnessed the defendant Herman Segal execute the documents (see, Eggleson v. Trustees of GE Pension Trust, 238 A.D.2d 871 [3d Dept. 1997]). It is also well-settled that a party who signs a document without any valid excuse for having failed to read it is conclusively bound by its terms (see, Shklovskiy v. Khan, 273 A.D.2d 371 [2d Dept. 2000]).
Accordingly, the court concludes that defendants Jefferson Omega Corp. and Herman Segal agreed to, and were obligated to pay the total sum of $3,500,000.00, including the additional sum of $950,000.00 to Joyce Ness in consideration of her surrendering her option to purchase the above premises.
The court further finds, for the reasons that follow, that the defendants' failure to tender the full balance of the contract price at the closing on the law day constituted a breach of the "time of the essence" agreement, thereby permitting the plaintiffs/sellers to retain the defendants'/purchasers' down payment of $350,000.00.
In a contract for the sale of real property in New York, it is well-settled that "[t]ime is not assumed to be of the essence... unless the parties have specifically so stated. Accordingly, one party to a contract may not unilaterally make time of the essence without reasonable and sufficient notice to the other party" (6 Warren's Weed, New York Real Property, Vendee & Vendor, §2.04 [b] [v] [4th ed]; see also, Hamburger v. Rieselman, 206 A.D.2d 822 [3d Dept. 1994]; Mohen v. Mooney, 162 A.D.2d 664 [2d Dept. 1990]; 91 NY Jur 2d, Real Property Sales & Exchanges, §§61-64, at 136-153). Time may be made of the essence by "clear, distinct, and unequivocal notice to that effect giving the other party a reasonable time in which to act" (Zev v. Merman, 134 A.D.2d 555, 557 [2d Dept. 1987], affirmed 73 N.Y.2d 781 [1988]; see also, 3 M Holding Corp. v. Wagner, 166 A.D.2d 580 [2d Dept. 1990]; see also, Internet Homes, Inc. v. Vitulli, 2004 N.Y. App. Div. LEXIS 8484 [2d Dept. 2004]).
 The contract between the parties, along with the Time of the Essence Notice by Joseph Berliner, Esq., dated January 26, 2004 (annexed to movant's papers), constituted clear and unequivocal notification that time was to be of the essence with respect to the closing. Moreover, it is readily apparent that the defendants were given a reasonable time in which to fulfill their [*5]obligations under the contract, dated June 23, 2003, from the date of the Time of the Essence Notice on January 26, 2004 until the law day, and there was no reason for their delay (see, Bardel v. Tsoukas, 303 A.D.2d 344 [2d Dept. 2003]; Spodek v. Feibusch, 246 A.D.2d 528 [2d Dept. 1998], appeal dismissed Spodek v. Feibusch, 91 N.Y.2d 1003 [1998]; Palmiotto v. Mark, 145 A.D.2d 549[ 2d Dept. 1988]). Once time is of the essence, it is of the essence for both parties, and plaintiffs are as entitled to enforce the provision as defendants (see, Stefanelli v. Vitale, 223 A.D.2d 361 [1st Dept. 1996]; Dub v. 47 E. 74th St. Corp., 204 A.D.2d 145 [1st Dept. 1994], appeal dismissed 84 N.Y.2d 850 [1994]).
In interpreting a contract, the court should arrive at a construction that will give fair meaning to all of the language employed by the parties to reach a practical interpretation of the expressions of the parties so that their reasonable expectations will be realized (see, Gonzalez v. Norrito, 256 A.D.2d 440 [2d Dept. 1998]; Joseph v. Creek & Pines, 217 A.D.2d 534 [2d Dept. 1995]). A contract should not be interpreted in such a way as to leave one of its provisions substantially without force or effect (see, Tantleff v. Truscelli, 110 A.D.2d 240 [2d Dept. 1985], affirmed 69 N.Y.2d 769 [1987]; Penguin 3rd Ave. Food Corp. v. Brook-Rock Assocs., 174 A.D.2d 714 [2d Dept. 1991]). A court may not write into a contract conditions the parties did not include, by adding or excising terms under the guise of construction, nor may it construe the language in such a way as would distort the contract's apparent meaning (see, Tikotzky v. City of New York, 286 A.D.2d 493 [2d Dept. 2001]).
Thus, where the terms of a written contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving practical interpretation to the language employed and the parties' reasonable expectations". (AFBT-II, LLC v. Country Vill. on Mooney Pond, Inc., 305 A.D.2d 340 [2d Dept. 2003]; quoting Slamow v. Del Col, 174 A.D.2d 725, 726 [2d Dept. 1991], affirmed 79 N.Y.2d 1016 [2d Dept. 1992]; see also, Del Vecchio v. Cohen, supra; Harris v. Ware, 142 A.D.2d 666 [2d Dept. 1988]).
Applying the above tenets of contract construction to the case at hand, this court finds, in reasonably construing the contract as a whole, along with the apparent desire of the sellers to exercise exigency in consummating the sale of the subject property, that the provision in the rider obligating the sellers to provide the purchasers with a fifteen-day notice to cure as a condition of contract termination was inapplicable where the termination was predicated upon non-payment of the balance of the contract price at closing (see, Baystone Equities, Inc. v. Gerel Corporation, 305 A.D.2d 260 [1st Dept. 2003], appeal denied 1 N.Y.3d 505 [2004]).
Notices to cure defined by default provisions are contemplated to be given prior to the law day, in cases where time is made of the essence, (see, Engels v. French, 274 A.D.2d 544 [2d Dept. 2000]; Grace v. Nappa, 46 N.Y.2d 560, 565 [1979]; see also, Parella, 1999-2000 Survey of New York Law: Real Property, 51 Syracuse L. Rev. 703, 707 [2001]), and their reasonableness is judged according to the timing of the law day (see, e.g., Carnegie Successors, Inc. v. Gross, 166 A.D.2d 224 [1st Dept. 1990]; Hegner v. Reed, 2 A.D.3d 683 [2d Dept. 2003], appeal denied 2004 N.Y. LEXIS 945 [2004]).
[*6]
In the case at bar, the closing was advanced to February 9, 2004, one day before the law day, at the request of the defendants. Closing counsel for the plaintiffs, Joseph Berliner, Esq., advanced the closing, but did not cancel the law day scheduled for February 10, 2004. It is uncontroverted that the plaintiffs were ready, willing and able to deliver title, but the defendants refused to pay the balance due under the contract of $3,150,000.00, insisting that they would only pay a balance of $2,200,000.00, which excluded the $950,000.00 attributable to the purchase of the option from plaintiff Joyce Ness. At this point, plaintiffs' closing counsel deemed defendants in default under the contract, and advised them that they could cure their default by reconvening at his office on the law day, February 10, 2004,and tendering the closing balance of $3,150,000.00 the following day. Thus, the defendants were duly notified that they were in default as soon as practicable, and they had a reasonable opportunity to cure their default by reappearing the following day with the entirety of the $3,150,000.00 closing balance due to the plaintiffs. Defendants failed to cure their default by doing so.
Under the facts at bar, it would have been impossible for the sellers to deliver notice of said payment default until February 9, 2004, the first attempted closing date, when the sellers first learned that the purchasers had failed to tender the entire balance due. The court declines to ascribe an interpretation to the default clause which would render it impossible for the sellers to perform prior to the closing day. The court also rejects the interpretation of the default provision suggested by the defendants, which would require the sellers to give the purchasers a fifteen-day cure period after the law day, effectively extending the law day by fifteen days and rendering the time-of-the-essence date in both the contract and Time of the Essence Notice a nullity.
Moreover, tender of performance is excused where the defect is not curable, for in such a case the tendering of performance would be an idle and useless ceremony (see, R.C.P.S. Assocs. v. Karam Developers, 258 A.D.2d 510 [2d Dept. 1999]; Ilemar Corp. v. Krochmal, 44 N.Y.2d 702 [1978]). Given the fact that the defendants refused to tender the entire balance of the contract amount at closing, vehemently maintaining that refusal by refusing to appear on the law day, and given that they have taken the position that such payment was never a part of the agreement between the parties, the court finds that the sellers' act of providing a fifteen-day notice to cure would have been an exercise in futility (see, Jay Levy Assoc. v. Mohlenhoff & Sons, Inc., 180 A.D.2d 665 [2d Dept. 1992]).
The default/liquidated damages provision of the contract, contained in paragraph 6 of the Rider provides that, in the event of the purchasers' default, "this agreement shall becomes void and of no effect, and the Seller shall retain all monies paid thereunder as liquidated damages, the same as if the agreement had never been made". Thus, the sellers' exclusive remedy for the purchasers' breach herein is the retention of the purchasers' down payment.
Accordingly, based upon the papers submitted to this court for consideration and the determinations set forth above, it is
ORDERED that the plaintiffs' motion is granted in all respects; and it is further
[*7]
DECLARED that defendants Jefferson Omega Corp and Herman Segal have breached the contract between Belle Harbor Washington Hotel, Inc., Levbarn Realty Co., and Bernstan Realty, Ltd. and Jefferson Omega Corp. or designee, dated June 23, 2003, and said agreement is null and void; and it is further
ORDERED that the defendant/escrowee Joseph A. Berliner, Esq. shall release and deliver the full amount of the purchasers' contract deposit now held in escrow, in the sum of $350,000.00, to the sellers within twenty (20) days of the date of service of a copy of this order with Notice of Entry; and it is further
ORDERED that said Escrowee, upon penalty of contempt, will submit an affidavit of compliance to this court within twenty (20) days of the date of service of a copy of this order with Notice of Entry.
The foregoing constitutes the order, decision, and opinion of the court.
Dated: June 25, 2004 
JANICE A. TAYLOR, J.S.C.
James Klatsky, Esq., Raice, Paykin & Krieg, for plaintiffs. Michael J. Petersen, Esq., for defendants.