The physician's affirmation which the plaintiffs submitted in opposition to the motion for summary judgment diagnosed the injured plaintiff as suffering only from cervical and lumbosacral sprains, which do not rise to the level of serious injuries (*see Keena v Trappen*, 294 AD2d 405 [2002]). Ritter, J.P., Smith, Friedmann, H. Miller and Crane, JJ., concur.

■ ISABEL HEGNER et al., Respondents-Appellants, v CORNELIA D. REED et al., Appellants-Respondents, et al., Defendant. [770 NYS2d 87]—

In an action, inter alia, to recover a down payment paid pursuant to a real estate contract, the defendants Cornelia De Groat Reed and Julia Toal Reed appeal from so much of a judgment of the Supreme Court, Suffolk County (Henry, J.), dated December 4, 2002, as, upon so much of an order of the same court dated September 23, 2002, as denied, in part, their cross motion for summary judgment and granted, in part, the plaintiffs' motion for summary judgment, is in favor of the plaintiffs and against them in the principal sum of $95,000, and the plaintiffs cross-appeal from so much of the same judgment as, upon so much of the same order as denied, in part, their motion for summary judgment, and granted, in part, the cross motion of the defendants Cornelia De Groat Reed and Julia Toal Reed for summary judgment, is in favor of those defendants and against them in the principal sum of $35,000.

Ordered that the judgment is reversed insofar as appealed from, on the law, the motion is denied in its entirety, the cross motion is granted in its entirety, the order dated September 23, 2002, is modified accordingly, and the matter is remitted to the Supreme Court, Suffolk County, for the entry of an amended judgment in accordance herewith; and it is further,

Ordered that the judgment is affirmed insofar as cross appealed from; and it is further,

Ordered that one bill of costs is awarded to the appellants-respondents.

In August 2001 the plaintiffs Isabel Hegner and Bettina Koster (hereinafter the buyers) and the defendants Cornelia De Groat Reed and Julia Toal Reed (hereinafter the sellers) entered into a contract for the purchase of a home in Sagaponack for $1,300,000. Upon execution of the contract the buyers deposited 10% of the purchase price, or $130,000, with the sellers' attorney, the defendant escrowee, Miles Anderson. The closing date was originally set for October 15, 2001. The contract contained a default provision which stated in pertinent part as follows: "If Purchaser defaults hereunder, Seller's sole remedy shall be to receive and retain the Downpayment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's *willful* default might be impossible to ascertain and the Downpayment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty." (Emphasis in original.)

The buyers alleged that the events of September 11, 2001, caused them economic hardship and shortly thereafter they sought recision of the contract and refund of their down payment. However, the sellers refused and then set a "time of the essence" closing date for November 13, 2001. On the morning of the closing, the buyers appeared at the house to conduct a walk through inspection and discovered that the premises were not in "broom clean" or vacant condition. The buyers alleged that this was a violation of the contract, and neither they nor any representative on their behalf appeared for the closing. The buyers then brought this action for return of the down payment, and both sides moved for summary judgment. The Supreme Court decided that although the buyers had anticipatorily breached the contract, the $130,000 down payment "[did] not reflect a reasonable measure of the [sellers'] actual damages." Instead, the Supreme Court decided that the sellers should retain only $35,000 of the deposit and that the balance, $95,000, less some costs and expenses, should be refunded to the buyers. This was error.

The Supreme Court correctly concluded that, under all of the facts and circumstances of this case, the buyers anticipatorily breached the contract since they "evinced an intent[ion] to abandon the contract" (*Savitsky v Sukenik,* 240 AD2d 557, 559 [1997]; *see Petrizzo v Pinks,* 154 AD2d 521 [1989]; *Cooper v Bosse,* 85 AD2d 616 [1981]). However, since the sellers thereaf-

ter set a time of the essence closing date, they chose to ignore the breach and treat the contract as still valid (*see Inter-Power of N.Y. v Niagara Mohawk Power Corp.,* 259 AD2d 932 [1999]; *Savitsky v Sukenik, supra; see also Dub v 47 E. 74th St. Corp.,* 204 AD2d 145 [1994]). Accordingly, the buyers were then obligated to perform the contract or forfeit their deposit.

Moreover, even assuming that the sellers were in breach of the contract on the day of the closing because the premises were not vacant, this alleged defect was curable within a reasonable time and thus the buyers were obligated to tender performance and permit the sellers the opportunity to cure (*see Ilemar Corp. v Krochmal,* 44 NY2d 702 [1978]; *Cohen v Kranz,* 12 NY2d 242 [1963]; *R.C.P.S. Assoc. v Karam Devs.,* 258 AD2d 510 [1999]). The buyers' failure to do so bars them from recovering their deposit (*see Cohen v Kranz, supra* at 246).

Finally, the sellers were entitled to retain the entire $130,000 down payment as liquidated damages in accordance with the terms of the contract. Contrary to the Supreme Court's conclusion, the sellers' retention of the entire down payment constitutes neither unjust enrichment nor an "unenforceable penalty" (*see Ittleson v Barnett,* 304 AD2d 526 [2003]; *see also Maxton Bldrs. v Lo Galbo,* 68 NY2d 373 [1986]). Santucci, J.P., Luciano, Schmidt and Adams, JJ., concur.